In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-24-00023-CR

**TROY SIMON CLAYTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. F18-29699**

## MEMORANDUM OPINION

Troy Simon Clayton pled guilty to the third-degree felony offense of violating a family protective order, and the trial court deferred adjudication and placed him on community supervision. *See* Tex. Penal Code Ann. § 25.07. The trial court later revoked Clayton's community supervision and adjudicated him guilty, then sentenced him to eight years of confinement. Clayton appeals his conviction, and in two issues, he contends: (1) the evidence was insufficient to prove that appellant committed the offense of aggravated assault with a deadly weapon as alleged in

1

Count One of the Motion to Revoke Unadjudicated Probation; and (2) the trial court abused its discretion in revoking his community supervision absent sufficient proof that he violated any condition of probation as alleged in the State's Motion to Revoke Unadjudicated Probation. We hold that (1) the evidence was sufficient to show by a preponderance of the evidence that Clayton committed the offense of aggravated assault with a deadly weapon, and (2) the trial court did not abuse its discretion in revoking Clayton's community supervision where the evidence was sufficient to show that he violated a condition of his community supervision. We will affirm the trial court's judgment as modified for the reasons discussed below.

## Background[1]

In 2018, Clayton was indicted for the third-degree felony offense of engaging in conduct toward "Denise" that violated a family protective order issued by a Jefferson County District Court.[2] *See id.* Following a guilty plea, the trial court deferred adjudicating Clayton and placed him on community supervision for ten years. Among other things, the first condition of Clayton's community supervision

---

[1]We limit our discussion of the background to those facts necessary to the appeal's resolution. Tex. R. App. P. 37.1.

[2]We refer to the crime victim by a pseudonym to protect her privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

included that he "[c]ommit no offense against the laws of this State or of any other state or of the United States."

In May of 2023, Clayton was arrested for committing aggravated assault with a deadly weapon against Denise, the same individual covered by the original protective order. The State filed a Motion to Revoke alleging multiple violations, including, as applicable here:

> 1). The said Troy Clayton committed the offense of Aggravated Assault with a Deadly Weapon on or about May 21, 2023, in the Jefferson County, Texas, the said Troy Clayton did then and there intentionally or knowingly threaten [Denise], a member of the Defendant's family, with imminent bodily injury and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, against the peace and dignity of the State, in violation of Condition (1) of Defendant's Deferred Adjudication order.

Clayton pleaded "not true" to the alleged violations. During an evidentiary hearing, multiple witnesses testified, including the officer called to the scene of the May 2023 assault, Denise, Clayton's probation officer, and Clayton.

At the hearing, Jasmine Dumas testified that she is a peace officer with the Port Arthur Police Department. Dumas said that on May 21, 2023, she was dispatched to the Southeast Texas Medical Center "in reference to a criminal mischief." When she arrived, she observed Denise alone "standing by her car [in] tears, visibly upset." She agreed that Denise appeared in fear for her life. Denise told Dumas, "He is going to kill me." Based on that statement, Dumas began investigating. Dumas explained that Denise's driver's side window was shattered,

3

and photographs of the vehicle's damaged window were admitted during the hearing. The photographs showed the shattered window with pieces of glass inside.

According to Dumas, Denise relayed to her in detail that someone had done that to her. Dumas testified that this would not happen to a vehicle naturally and "[s]ome sort of force" caused it. She indicated it could have been hit with a fist, a gun, or other objects. Denise told her that "[a] butt of a firearm[]" caused the damage, so Dumas searched for the point of force to the window. Dumas located shattered glass inside the car, which confirmed what Denise told her. On cross-examination, Dumas agreed that many things could break the automobile window, including a fist.

She contacted dispatch and confirmed that Denise had a protective order on file, which protected her from Clayton. That said, Dumas did not know if the protective order was still enforceable when this incident occurred. Dumas decided to file charges on Clayton for aggravated assault with a deadly weapon based on what Denise told her and how the weapon was used.

Denise also testified at the hearing. She said that she works as a pharmacy technician at "The Medical Center Southeast Texas" and has worked there about two years. In May 2023, she was married to Clayton, and she identified him in court. Denise explained that they married in April of 2018 but had been together on and off for about fifteen years. They separated before this incident and remained separated at the time of the hearing, but Denise initiated divorce proceedings. She

4

also testified that she was the complainant for the offense of violating the protective order that led to Clayton's probation. She indicated that she had a protective order against Clayton in the past, and he violated that protective order, which led to the felony charges. Denise testified that Clayton was accused of assaulting her multiple times, but she did not follow through with the charges in the past. She believed he would not do it again and "that it would get better[;]" instead, it is worse. Denise relayed that she is concerned Clayton will get out, and it will happen again. He tried to communicate with her while in custody, and she outlined all the attempts he made since his arrest in May of 2023.

Denise explained that on the morning of May 21, 2023, before she went to work, she and Clayton argued. The argument was not over, so she stated that Clayton "came to my job to finish the argument." She left for lunch, and within ten or fifteen seconds after she returned to the parking lot, Clayton pulled in on her passenger side and parked next to her. She described him getting out of his car and tapping on her passenger window. She turned her radio up because she did not want to hear what he was saying and wanted him to leave, because she was at work.

According to Denise, Clayton did not leave, and he became frustrated when she turned up the music. She said that "he pops the trunk and goes inside[,]" then walked to the driver's side but she did not know what he was getting. Denise testified that Clayton broke the window of her car as she sat inside. She said that Clayton

5

broke the window "[w]ith a gun bottom that he got out of . . . his trunk." She testified that Clayton began "banging through the window like to get through the window to me," and she saw the gun "[c]oming back and forth, back and forth until it shattered[.]" Denise was "positive" Clayton had a gun and indicated she saw him rack the gun. She testified that she was afraid and thought Clayton was trying to kill her. She immediately put her car in gear and drove into the median, and that is when Clayton left. Denise indicated she felt threatened and was concerned about imminent bodily injury. She told the officer she believed the only reason she was alive was because Clayton could not get the gun to work correctly.

Alex Hill, a community supervision officer for Jefferson County who supervised Clayton, also testified. Hill supervised Clayton for Cause No. 18-29699, violation of a protective order. Hill testified regarding Clayton's other violations. He noted that he has failed to provide verification that he has completed the required service hours. Hill testified that Clayton also failed to complete the required moral reconation therapy program, that would help with coping mechanisms and anger, which would hopefully avoid scenarios like the one with Denise.

Clayton testified that he was placed on probation in 2019 for the offense of violating a protective order, and the protective order has since expired. According to Clayton, he and Denise married "during the protective order in April 2018." He said they stopped living together on May 21, when this incident occurred.

6

He explained that they had recently been evicted from their apartment, and the disagreement on the morning of May 21 was about money. Clayton claimed money was missing he could not account for, and he wanted answers from Denise. About 11 a.m., Clayton knew that Denise would be on her lunch break, so he went to her regular parking spot and knocked on the window. He admitted he was angry at the time, and when he asked to talk about the money, Denise rolled her eyes, turned up the music on her phone, and started texting. Clayton testified that after Denise complained that he came to her job, he was upset. He admitted he hit the window with his fist one time, and it shattered. Clayton denied that he retrieved a gun from his car. According to Clayton, after the incident, he called police and asked them to do a welfare check. He testified that he gave police the same version of events he provided at the hearing and admitted he broke the window.

Clayton testified that Denise had to seek a protective order against him, which resulted in him being placed on felony probation for violating the protective order. He understood he was not supposed to have contact with the victim, but he testified he contacted her while in custody knowing it violated court rules.

Clayton outlined the steps he took to comply with the other community supervision terms. He also testified that he and Denise were in contact since this happened and went on a trip to Las Vegas in June of 2023 without court approval. State's Exhibit 5 was also admitted into evidence, which included, among other

things, the motion to revoke probation, administrative hearings, and a motion to dismiss an earlier motion to revoke.

After the hearing, the trial court found that Allegation 1 of the Motion to Revoke was "proven true" "by a preponderance of the evidence or greater" regardless of whether it was "assault with a deadly weapon, namely, a firearm or the lesser included assault, . . . but it's nonetheless assaultive behavior." The trial court stated that it believed Denise's version of events, and "at the very least" Clayton committed the lesser included offense of assault under Penal Code section 22.01(a)(2) while on probation for violation of a protective order. The trial court also noted that whether it was Clayton's fist, the firearm, or some other part of a gun, "a deadly weapon was used because anything capable of breaking the glass like that is certainly capable of causing death or serious bodily injury." The trial court granted the Motion to Revoke Unadjudicated Probation, found him guilty, and sentenced him to eight years of confinement.

**Initial Matter: Error Preservation**

Clayton focuses on the use of his hand versus the firearm during the assault and contends the evidence did not constitute "sufficient proof that a deadly weapon was used or exhibited as alleged in Count One." To the extent he contends there was a due process violation because there was a variance between the Motion to Revoke and the proof at trial, we conclude he has failed to preserve such a complaint for our

8

review. To preserve a complaint for our review, a party must present the trial court with a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. *See* Tex. R. App. P. 33.1(a)(1).

A defendant must raise deficiencies in a motion to revoke at or before trial, and failure to object at that time forfeits the sufficiency of the notice provided by the motion on appeal. *Labelle v. State,* 692 S.W.2d 102, 105 & n.2 (Tex. Crim. App. 1985) (noting a line of cases holds that a motion to revoke's allegations do not require the same particularity as required in an indictment or information; rather, "the motion to revoke must simply give fair notice of the violation involved in order to comport with minimum due process"); *Hunt v. State,* 5 S.W.3d 833, 835 (Tex. App.—Amarillo 1999, pet. ref'd) (holding appellant forfeited complaints about deficiencies in the motion to revoke when he failed to raise them at or before trial); *see also Armstrong v. State*, No. 02-13-00243-CR, 2014 WL 1324423, at *2 (Tex. App.—Fort Worth Apr. 3, 2014, no pet.) (per curiam) (mem. op., not designated for publication).

Clayton failed to complain about a variance in the Motion to Revoke or a due process violation in the trial court. Thus, he has failed to preserve any such complaint for our review. *See* Tex. R. App. P. 33.1(a); *Labelle*, 692 S.W.2d at 105 & n.2; *Hunt*, 5 S.W.3d at 835; *see also Armstrong*, 2014 WL 1324423, at *2.

9

**Motion to Revoke: Standard of Review**

We review a trial court's order adjudicating guilt for an abuse of discretion. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a hearing to revoke deferred adjudication, the State must only prove the violation of a condition of probation by a preponderance of the evidence. *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013); *Rickels*, 202 S.W.3d at 763–64. The evidence meets this standard when the greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision. *Rickels*, 202 S.W.3d at 763–64 (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). We examine the evidence in the light most favorable to the trial court's order. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

When determining whether the allegations in the motion to revoke are true, the trial court is the sole trier of facts, the judge of the witnesses' credibility, and the arbiter of the weight to give the testimony. *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980); *Trevino v. State*, 218 S.W.3d 234, 240 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Reconciling conflicts in the evidence is within the trial court's province, "and such conflicts will not call for reversal if there was enough credible testimony to support the conviction." *Shah v. State*, 403 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citation omitted). The State

need only establish one sufficient ground for revocation to support the trial court's order revoking community supervision. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *see also Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009) (quoting *Jones v. State*, 571 S.W.2d 191, 193–94 (Tex. Crim. App. 1978)) (other citations omitted).

**Applicable Law: Aggravated Assault**

A person commits aggravated assault with a deadly weapon when he intentionally or knowingly threatens another with imminent bodily injury, while using or exhibiting a deadly weapon. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2). "Deadly weapon" means a firearm or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id.* § 1.07(a)(17)(A), (B). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). "The gravamen of aggravated assault, therefore, is either causing bodily injury or threatening imminent bodily injury, depending on which theory has been pleaded in the charging instrument." *Shelby v. State*, 448 S.W.3d 431, 438 (Tex. Crim. App. 2014).

## Analysis

In two issues, Clayton contends: (1) the evidence was insufficient to prove that appellant committed the offense of aggravated assault with a deadly weapon as alleged in Count One of the Motion to Revoke Unadjudicated Probation; and (2) the trial court abused its discretion in revoking his community supervision absent sufficient proof that he violated any condition of probation as alleged in the State's Motion to Revoke Unadjudicated Probation. In his brief, Clayton addresses these issues together, as do we.

Here, the State alleged that Clayton violated the first condition of his community supervision, which was "[c]ommit no offense against the laws of this State or of any other state or of the United States." The State further alleged that Clayton violated this condition by "intentionally or knowingly threaten[ing] [Denise], a member of the Defendant's family, with imminent bodily injury and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault[.]" At trial, Denise testified that Clayton shattered her driver's window with the butt of a firearm as she sat in her car and that during the incident, Clayton racked the firearm. Denise told the trial court that she was in fear for her life, and she believed Clayton would have killed her if the gun worked properly. Likewise, the responding officer corroborated this information when she described Denise being very afraid, the shattered window, and glass inside the

12

vehicle. Clayton also admitted that he was angry over a money dispute, went to Denise's place of employment, and broke the window. Clayton disputed having a gun and claimed he broke the window with his hand. The trial court in this case explained that it believed Denise's version of events. Although there was conflicting testimony about whether Clayton had a gun, the trial court as the factfinder, was the sole judge of the witnesses' credibility and weight to give their testimony. *See Taylor*, 604 S.W.2d at 179; *Trevino*, 218 S.W.3d at 240.

Viewing the evidence in the light most favorable to the trial court's ruling, we hold the evidence is sufficient to show by a preponderance of the evidence that Clayton intentionally or knowingly threatened Denise, a member of his family, with imminent bodily injury and exhibited a firearm or weapon during the commission of the assault. *See* Tex. Penal Code Ann. §§ 1.07(a)(17), (46), 22.01(a)(2), 22.02(a)(2); *see also Hacker*, 389 S.W.3d at 864–65; *Rickels*, 202 S.W.3d at 763–64. We also hold that the trial court did not abuse its discretion in adjudicating guilt, where it determined the greater weight of the credible evidence created a reasonable belief that Clayton violated a condition of his community supervision. *See Rickels*, 202 S.W.3d at 763–64. We overrule issues one and two.

**Modification of the Trial Court's Judgment**

Clayton notes that the trial court's judgment indicates he pleaded "true" to Count One in the State's Motion to Revoke, but the record reveals he pleaded "not

13

true" to all allegations. We have the power to reform or modify a trial court's judgment to make the record speak the truth if we have the necessary information before us to do so. *See* Tex. R. App. P. 43.2(b) (allowing appellate court to modify trial court's judgment and affirm as modified); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993) (noting a court of appeals may modify the lower court's judgment by correcting or reforming it). Therefore, we modify the trial court's judgment to read "Not True" as reflected in Clayton's plea to the allegations. *See* Tex. R. App. P. 43.2(b); *Bigley*, 865 S.W.2d at 27.

## Conclusion

Having modified the judgment to reflect that Clayton pleaded "Not True" to the allegations and having overruled Clayton's issues, we affirm the judgment as modified.

AFFIRMED AS MODIFIED.

W. SCOTT GOLEMON
Chief Justice

Submitted on September 12, 2025
Opinion Delivered January 7, 2026
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

14